### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **YONG KIM,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-1879** |
| | : | |
| **VILLANOVA UNIVERSITY** | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Yong Kim, at one time the only Asian-American graduate student in Defendant Villanova University's Philosophy Department, had been working on his Ph.D. for thirteen years when, with one day's notice, he was terminated from the program.  He has sued Villanova for breach of contract (express and implied), promissory estoppel, common law due process, and violation of its own non-discrimination policy.  Defendant now moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  For the reasons that follow, the motion will be granted and the Complaint shall be dismissed without prejudice with leave to amend.

### I.    FACTUAL ALLEGATIONS

On May 18, 2020, having already written most of his Ph.D. thesis, Kim received an email from the Dean of Graduate Studies at Villanova University, Emory H. Woodard with the subject line: "Villanova University Notice of Academic Termination."  In the email, Woodward informed Kim that he "must be terminated from the program effective May 19, 2020" (the next day), and that he had until June 19, 2020 to appeal the decision.  Kim appealed and attached a draft of his thesis to his appeal.

1

## II.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. When analyzing a motion to dismiss, the Complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief."  *Id*. at 210–11.[1]

## III.     DISCUSSION

### A.  First Cause of Action

#### i.     *Breach of Contract*

Plaintiff alleges that Dean Woodard's dismissal letter breached an express contract

---

[1] At the motion to dismiss stage, consideration is given only to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  Here, Plaintiff attaches to his Complaint an excerpt of Villanova's Graduate Handbook—the section entitled "Academic Progress, Probation and Dismissal."  Defendant attaches to its brief what it asserts is a full version of the Graduate Handbook and asks that its contents be considered in deciding the motion.  Because it is unclear at this stage of the proceedings on what exactly Plaintiff's claims are based, the Graduate Handbook will not be considered.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994) (authentic document that a defendant attaches as an exhibit to a motion to dismiss may be considered if the plaintiff's claims are based on that document).

between the Parties.  But, although the Complaint recites several conclusory legal allegations, including that Defendant "violated its contract with Mr. Kim through its dismissal letter of 05/19/20" and that "Mr. Kim was illegally dismissed," it does not explain, as it must, what exactly the contract is, what its essential terms are and what terms were allegedly breached by the University.  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (setting forth elements of a breach of contract under Pennsylvania law as "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.").

It does appear from his Complaint that Plaintiff may be relying on University policies, guidelines, and handbooks as a basis for his contractual claim.  And, properly plead, such a claim may have viability.  *See Barker v. Trs. of Bryn Mawr College*, 122 A. 220, 221 (Pa. 1923) (holding that the relationship between a private college and a student is "solely contractual in character"); *Doe v. Univ. of the Scis.*, 961 F.3d 203, 211–15 (3d Cir. 2020) (holding that appellant had stated a breach of contract claim based on the university's student handbook and sexual misconduct policy).  But, it is entirely unclear from this Complaint what document or documents form the basis of his contractual claim or what specific and definite terms in the university guidelines and policies have allegedly been violated.  *See, e.g. Vurimindi v. Fuqua Sch. of Bus.* 435 F. App'x 129, 133–34 (3d Cir. 2011) (citing *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. 1999) (affirming dismissal of breach of contract claim for failure to set forth in Complaint which specific and definite terms in the university guidelines and policies had been violated).  Accordingly, Plaintiff's breach of contract claim cannot survive this motion to dismiss.

### ii.    *Implied Contract*

His implied contract claim fares no better. "A contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances." *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009). "The essential elements of breach of implied contract are the same as an express contract, except the contract is implied through the parties' conduct, rather than expressly written." *Enslin v. The Coca-Cola Co.*, 136 F. Supp.3d 654, 675 (E.D. Pa. 2015).

It appears that Plaintiff's claim for implied contract is premised on "a norm that universities follow requiring a person to complete their Ph.D. within seven years"; that the Philosophy Department had not abided by the norm in that several of its students had been in the program for longer; and, that the University, in response to the Philosophy Department's laxity, retaliated against Plaintiff by dismissing him from the program. From this, it is difficult if not impossible to discern what conduct forms the basis of Plaintiff's implied contract claim, what the terms are of the alleged implied contract, and how the University breached such terms. Absent more, Plaintiff's cause of action for breach of implied contract cannot survive this motion to dismiss. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (holding that *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and Federal Rule of Civil Procedure 8(a)(2) require the complaint to give defendant fair notice of what the claim is and the grounds upon which it rests).

4

### iii.    *Promissory Estoppel*

Plaintiff further alleges, apparently in support of his claim for promissory estoppel, that he relied on promises made by Defendant and by his advisor.  The Complaint does not identify what promises were made by Defendant or by his advisor, nor how Plaintiff relied on them. This paucity requires dismissal of the claim in that to state a claim for promissory estoppel, a plaintiff must allege (and in this case Kim has not done so sufficiently) that: "(1) the promisor made a promise that would reasonably be expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Pratter v. Penn Treaty Am. Corp*., 11 A.3d 550, 562 (Pa. Commw. 2010).

### B.  Due Process

In support of his claim for a violation of common law due process,[2] Kim alleges that: (1) Plaintiff "was never given notice or an opportunity to be heard, prior to his dismissal"; (2) he "was dismissed without any input from his advisor, Dr. Walter Brogan, or the Philosophy Department at Villanova University"; (3) he "did not have the opportunity to dispute the evidence against him, prior to his dismissal"; (4) he "was not given the opportunity to have representation in any form to dispute his dismissal"; and (5) he "was not given the opportunity for cross-examination, the ability to call witnesses, or was allowed to make a statement to any dismissal committee."

Although Courts are deeply reluctant to get involved in the disciplinary process of private

---

[2] Plaintiff clarified in his briefing that his is not a constitutional due process claim: it rests on a violation of common law due process.

universities,[3] *see, e.g.*, *Schulman v. Franklin & Marshall Coll.*, 538 A.2d 49, 52 (Pa. Super. 1988), they must if such processes fail to "comport with basic notions of due process and fundamental fairness." *Boehm v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575, 580 (Pa. Super. 1990); *see also Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755 (Pa. Super. 1991) (disciplinary proceedings of a private college must meet standard of fundamental fairness); *Murphy v. Duquesne Univ. of Holy Ghost*, 745 A.2d 1228 (Pa. Super. 1999) (courts accord deference to private university grievance procedures "if they comport with due process"). Reading the allegations in the light most favorable to the Plaintiff, he adequately states a claim for violation of common law due process, which claim shall not be dismissed.

## C.  Discrimination

Plaintiff says Villanova treated him differently than other students "because of his ethnicity as an Asian American student."  He alleges that such treatment was in contravention of the following non-discrimination statement, found in Defendant's Student Handbook and applicable to "all educational practices and programs":[4] that "there should be no discrimination against any student on any basis prohibited by law including race, color, national origin, ancestry, ethnicity, religion, gender, sexual orientation, gender identity, age, veteran status or liability."

---

[3] The Parties dispute whether the process that occurred here constituted an "academic dismissal" or a "disciplinary proceeding."  Taking his allegations as true, it is assumed at this stage that Plaintiff was dismissed as a disciplinary matter rather than "for any academic reason."

[4] Defendant interpreted Plaintiff's Third Cause of Action as potentially making a claim under Title VI.  Plaintiff did not respond to Defendant's arguments on this point in his Response to Defendant's Motion to Dismiss.  Therefore, Plaintiff has waived this claim.  *Levy-Tatum v. Navient Solutions., Inc.*, 183 F. Supp.3d 701, 712 (E.D. Pa. 2016) (plaintiff's failure to address some of defendant's arguments in reply brief resulted in abandonment of those claims); E.D. Pa. R. Civ. P. 7.1(c) ("[i]n the absence of a timely response, the motion may be granted as uncontested").

Plaintiff, the only Asian-American student in the Ph.D. program when he began his studies in 2006, alleges that he was "treated differently than other non-Asian students," and in particular: (1) of the "several students who were significantly" past the seven year "norm" for completing a Ph.D., only Plaintiff was dismissed; (2) other students had been awarded a Ph.D. in philosophy in or after their thirteenth year in the program; (3) other students had been in the program longer than Plaintiff; and, (4) Plaintiff was the only student in the program whose request for a leave of absence due to the COVID-19 pandemic was not granted. According to Plaintiff, after "allowing plaintiff and others to ignore alleged requirements for doctoral students," the University then "decided to make an example of plaintiff," by dismissing him "under the pretextual guise that he had remained at Villanova for too long a period without completing his Ph.D. dissertation."

This legal theory was addressed fully by my esteemed colleague Judge Robreno in the matter of *David v. Neumann Univ.*, 187 F. Supp.3d 554 (E.D. Pa. 2016), a matter in which a graduate student at Neumann University, an African American woman, had been terminated from the university's doctoral program after failing a section of her practicum examination. *Id.* at 556. Among other things, the plaintiff alleged claims for breach of contract for failure "to follow the student handbook and regulations" and for racial discrimination. *Id.*

As here, the Neumann plaintiff argued that the university's policy of zero tolerance for racial discrimination as set forth in the University Student Affairs Handbook contained contractual obligations breached by the University. *Id.* at 559. Judge Robreno explained that while "[a] school's anti-harassment policy 'may fall under one or more of the categories of documents that can create a [contract] between a student and a school,' if the requirements for an

7

enforceable contract are otherwise met[,] [i]t cannot be said that a school's anti-discrimination or anti-harassment policy constitutes an enforceable contract per se between the university and the student." *Id.* (citations omitted). Specifically, the Court held that:

> [L]ike all other contracts, the terms of the agreement must be "sufficiently definite to be enforced." Here, Plaintiff identifies no terms that are sufficiently definite. Instead of contractually guaranteeing a right to specific types of investigation, support, or sanctions in the event that a student experiences offensive and unwelcome conduct, the provisions merely declare the University's aspirational approach to 'complaints involving illegal discrimination, harassment and/or retaliation.'

*Id.* at 559–60 (citation omitted) (citing Amended Complaint).

There, as here, "such provisions are not definite enough to be enforced." *Id.* at 560. They are appropriate and commendable, perhaps even a critical component of the fabric of the academic community, but do not create any sort of affirmative, enforceable duty on the part of the University. *Id.; see also Vurimindi*, 435 F. App'x at 133–34 (holding that plaintiff could not state a claim for breach of contract based on school's general anti-harassment policy because the policy merely stated the school's position that harassment is unacceptable and plaintiff failed to show any specific promises or "specific and definite terms that were violated"). Here, just as in *Neumann*, Plaintiff fails to plead a claim for breach of contract or discrimination based on the University's anti-discrimination policy. Thus, his discrimination claim will be dismissed without prejudice for failure to state a claim.

An appropriate order follows.

BY THE COURT:

/s/Wendy Beetlestone, J.

_____
WENDY BEETLESTONE, J.

8